UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

G.B.; S.S.; and individuals similarly situated,

                Plaintiffs,

      -against-

NASSAU COUNTY; NASSAU COUNTY
EXECUTIVE BRUCE BLAKEMAN, in his
official capacity,

                Defendants.

CIVIL CASE NO. 2:24-cv-05884

**PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION
FOR PRELIMINARY INJUNCTION
AND A TEMPORARY RESTRAINING
ORDER**

DISABILITY RIGHTS NEW YORK
Jessica Richwalder, Esq.
Christina Asbee, Esq.
William Tronsor, Esq.
279 Troy Rd., Ste 9
PMB 236
Rensselaer, NY 12144
Attorneys for Plaintiffs

**Table of Contents**

Preliminary Statement ........................................................................................................... 1

Statement of Facts .................................................................................................................. 1

Legal Standard ....................................................................................................................... 4

Argument ................................................................................................................................ 5

    I.    Plaintiffs Have Demonstrated a Likelihood of Success on the Merits ............................ 5

        A.    The Mask Ban is Preempted by Federal and State Law ......................................... 5

            1.    The Mask Ban is Conflict Preempted by the ADA and Section 504 ........................ 5

            2.    The Mask Ban is Field Preempted by State Law ........................................ 8

        B.    The Mask Ban Violates the ADA and Section 504 ......................................... 9

            1.    Plaintiffs are Qualified Individuals with Disabilities ............................................ 9

            2.    Defendants are a Public Entity Subject to Title II of the ADA .............................. 10

            3.    The Mask Ban Discriminates Against Plaintiffs Based on Their Disabilities .......... 10

    II.    Plaintiffs Will Suffer Irreparable Harm if a Preliminary Injunction is not Granted ..... 12

    III.    The Balance of Hardships Weighs Heavily in Plaintiffs' Favor ................................. 17

    IV.    The Mask Ban is Contrary to Public Interest ........................................................... 19

Conclusion ........................................................................................................................... 21

**Table of Authorities**

**Cases**

*Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004) ...................... 11

*Andino v. Fischer*, 555 F. Supp. 2d 418 (S.D.N.Y. 2008) ............................................................... 4

*Arc of Iowa v. Reynolds*, 24 F4th 1162 (8th Cir. 2022) ................................................................. 12

*Bell & Howell v. Masel Supply Co.*, 719 F.2d 42 (2d Cir.1983) .................................................. 12

*Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342 (2d Cir. 2003) ...................................... 4

*Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013)........ 10

*Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602 (E.D.N.Y. 2010) ............................................... 10

*Brown v. Connecticut*, 2010 WL 2220580 (D. Conn. May 27, 2010) ........................................... 6

*eBay Inc. v. Mercexchange LLC.*, 547 U.S. 388 (2006) ............................................................... 19

*Eng. v. Gen. Elec. Co.*, 496 U.S. 72 (1990) .................................................................................. 5

*Galusha v. New York State Dep't of Envtl. Conservaation*, 27 F. Supp. 2d 117 (N.D.N.Y. 1998)
............................................................................................................................................. 13

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ..................................................................................... 6

*Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir.1998) ........................................................... 6

*Ligon v. City of New York*, 925 F. Supp. 2d 478 (S.D.N.Y. 2013) ............................................... 5

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ............................................ 10

*Main St. Baseball, LLC v. Binghamton Mets Baseball Club*, Inc., 103 F. Supp. 3d 244 (N.D.N.Y.
2015) ....................................................................................................................................... 17

*Martinez v. Cuomo*, 459 F. Supp. 3d 517 (S.D.N.Y. 2020)......................................................... 13

*Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144 (2d Cir. 2013) ........................... 5, 6

*Mint, Inc. v. Amad*, 2011 WL 1792570 (S.D.N.Y. May 9, 2011)................................................. 13

*Montana Med. Ass'n v. Knudsen*, 581 F.Supp. 3d 1232 (D. Mon. 2022)........................................7

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012) ........................4

*Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012)........................6

*Olmstead v. L.C.*, 527 U.S. 581 (1999)........................................................................................18

*Papadimitriou v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, 2023 WL 4138517 (E.D.N.Y. June

22, 2023) ........................................................................................................................................4

*People of New York ex rel. Spitzer v. Cty of Delaware*, 82 F. Supp. 2d 12 (N.D.N.Y. 2000)......12

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) ............................................................................6

*Quinones v. City of Evanston, Ill.*, 58 F.3d 275 (7th Cir. 1995)....................................................5

*Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010)*........................................................................13, 17

*Spiteri v. Russo*, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ......................................................6

*Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead*, 91. A.D.3d 126 (2011) .... 8

*Tom Doherty Assocs. Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995)....................13

*Weinberger v. Romero–Barcelo*, 456 U.S. 305 (1982)..................................................................19

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)

........................................................................................................................................4, 13, 17, 19

**Statutes**

28 C.F.R. §§ 35.130(b)(1)(i)-(iii)..................................................................................................11

29 C.F.R. § 1630.2(i) .....................................................................................................................9

29 U.S.C. § 794(a) ........................................................................................................................11

29 U.S.C. § 794(b) ........................................................................................................................10

42 U.S.C. § 12102(2)(A)(B) ..........................................................................................................9

42 U.S.C. § 12131.....................................................................................................................9, 10

42 U.S.C. § 12188 ................................................................................................ 11

45 C.F.R. §§ 84.4(b)(1)(ii)-(iii) ........................................................................... 11

N.Y. Penal Law 240.35(4) ............................................................................... 7, 8

NASSAU COUNTY, N.Y., MISCELLANEOUS LAWS OF NASSAU COUNTY TITLE 91 (effective August

14, 2024) ............................................................................................... passim

## Constitutional Provisions

U.S. Const. art. VI, cl. 2 ......................................................................................... 5

## Court Documents

G.B. Aff. ........................................................................................................ 3, 4

Richwalder Aff ................................................................................................. 16

S.S. Aff........................................................................................................ 2, 3, 15

Tronsor Aff. ¶ .............................................................................................. 14, 16

**Preliminary Statement**

Nassau County recently enacted the Mask Transparency Act (the "Mask Ban"), which bans face masks in the County. The Mask Ban forbids any person from wearing a facemask outside their own private property and affords law enforcement immense power to discern the intent of anyone who wears a mask. The Mask Ban was allegedly enacted to address issues with masked crime that have been fabricated by politicians to push through a law which does not serve the public good.

The Mask Ban places individuals with disabilities in grave danger as they must decide between remaining isolated from public life in their homes or going out into the community to face inevitable harassment, and potential detainment or arrest.

Plaintiffs seek a temporary restraining order and mandatory preliminary injunction to immediately stay enforcement of the Mask Ban in Nassau County.

**Statement of Facts**

**Facts Regarding the Mask Ban**

On August 14, 2024, County Executive Bruce Blakeman signed the Mask Ban into law in Nassau County. The law reads in relevant part:

    a) No person or persons while wearing any mask or facial covering whereby the face or voice is disguised with the intent to conceal the identity of the wearer shall enter, or appear upon or within any sidewalk, walkway, alley, street, road, highway or other public right-of-way or public property or private property without the consent of the owner or tenant. This law shall not apply to facial coverings worn to protect the health and safety of the wearer, for religious or cultural purposes, or for the peaceful celebration of a holiday or similar religious or cultural event for which the wearing of masks or facial coverings are customarily worn. A law enforcement officer may require a person or persons to remove the mask during traffic stops or when the officer has reasonable suspicion of criminal activity and/or intention to partake in criminal activity.

b)  The provisions of this section shall apply only if the person wearing the mask or facial covering:

1.  remains or congregates in a public place with other persons so masked or disguised, or knowingly permits or aids persons so masked or disguised to congregate in a public place; or

2.  acts with the intent, by force or threat of force, to injure, intimidate, or interfere with any person because of the person's exercise of any right secured by federal, state, or local law or to intimidate such person or any other person or any class of persons from exercising any right secured by federal, state, or local law; or

3.  acts with the intent to intimidate, threaten, abuse, or harass any other person; or

4.  is engaged in conduct that could reasonably lead to the institution of a civil or criminal proceeding against her or him, with the intent of avoiding identification in such a proceeding.

NASSAU COUNTY, N.Y., MISCELLANEOUS LAWS OF NASSAU COUNTY TITLE 91 (effective August 14, 2024).

**Facts Regarding Plaintiffs**

### I.    S.S.

S.S. is a resident of Nassau County and has been for 31 years. S.S. Aff. ¶ 2. They have common variable immunodeficiency (CVID), kidney disease, a respiratory impairment, and post-viral syndrome. S.S. Aff. ¶ 4. Due to CVID, S.S.'s body does not create its own immunoglobulins. S.S. Aff. ¶ 5. As a result, S.S. has been injecting themselves with immunoglobulins daily for more than 20 years. S.S. Aff. ¶ 6. S.S.'s disabilities increase their risk of serious side effects and death should they become ill. S.S. Aff. ¶¶ 8-12. S.S. wears a KN95 mask whenever they leave their home and will be around other people and has done so since early 2020. S.S. Aff. ¶¶ 14-19. When S.S.'s spouse goes out in public they also wear a mask in order to protect S.S. S.S. Aff. ¶¶ 26-27.

Even prior to the Mask Ban, S.S. often received sneering looks from other people while in public wearing a mask. S.S. Aff. ¶ 21. Since the Mask Ban, S.S. is terrified to go out in public while wearing a mask. S.S. Aff. ¶¶ 22-24. They fear harassment and assault by other private citizens, and fear being stopped for questioning by police. S.S. Aff. ¶¶ 22-24, 31-34. In order to preserve their health, S.S. would not remove their mask in public even if instructed to do so by a police officer. S.S. Aff. ¶ 25.

On August 9, 2024, S.S. received an email from Legislator Scott Strauss about the Mask Ban. S.S. Aff. ¶ 28; S.S. Exhibit A. The email contained an alarming image of a person wearing a medical mask and referred to this person as a "faceless thug." S.S. Aff. ¶ 29; S.S. Exhibit A. The image and the email made S.S. afraid to contact their legislators with their concerns about the Mask Ban. S.S. Aff. ¶¶ 30-31. S.S. is also afraid to contact police should they be confronted by another person for wearing a mask. S.S. Aff. ¶ 32.

## II.    G.B.

Plaintiff G.B. is a resident of Nassau County and has been for 24 years. G.B. Aff. ¶ 2. G.B. is a person with a mobility disability who uses a wheelchair and has asthma. G.B. Aff. ¶¶ 4-5. G.B.'s disabilities increase their risk of serious side effects and death should they become ill. G.B. Aff. ¶¶ 6-9. They wear a facemask when they go out in public, join events in public and private spaces, and shop at places such as the grocery store. G.B. Aff. ¶¶ 10, 13. G.B. is an active community member and an advocate for the Disability Community in Nassau County. G.B. Aff. ¶¶ 14-18. G.B. has participated in rallies and protests in their community and plans to continue to organize and/or join peaceful protests in Nassau County to advocate for the civil rights of people with disabilities. *Id.* G.B. plans to continue to engage in peaceful protest while wearing a mask in

Nassau County. G.B. Aff. ¶ 17. G.B. has many friends who mask, and G.B. also wears a face mask around their friends to protect them. G.B. Aff. ¶¶ 11-12.

G.B. is fearful of police interaction, arrest, and detainment because they wear a mask in Nassau County. G.B. Aff. ¶ 19. While in public and private places, strangers have come up to G.B. since August 5, 2024, to ask G.B. if they are sick and why they are wearing a mask. G.B. Aff. ¶ 20. G.B. is afraid of unwanted contact, harassment, discrimination, and/or abuse by private people and government employees in Nassau County because they wear a mask to manage their disability. G.B. Aff. ¶¶ 23-26. G.B. intends to continue to go out in public and private places, such as local parks, on the sidewalks, in government buildings, and into stores open to the public, while wearing a mask. G.B. Aff. ¶ 21.

## Legal Standard

Plaintiffs are entitled to injunctive relief. A plaintiff seeking a temporary restraining order must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This Court recognizes that "the standard for an entry of a TRO is the same as for a preliminary injunction." *Papadimitriou v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, 2023 WL 4138517, at *1 (E.D.N.Y. June 22, 2023) (citing *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases)). In some instances, a court will apply a heightened standard. *See N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (citing *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003)) (For a court to grant a mandatory injunction, "the movant must show a 'clear' or 'substantial' likelihood of success" on the merits.); *see also Ligon v. City of New York*, 925 F. Supp. 2d 478, 486 (S.D.N.Y. 2013)

4

("[W]here 'the injunction sought will alter rather than maintain the status quo,' the movant must show [a] 'clear' or 'substantial' likelihood of success." (internal citation omitted)). Not enforcing the Mask Ban maintains the status quo because Defendants have yet to issue directives and guidance to law enforcement. This Court need not apply the heightened standard to review Plaintiffs' request for immediate injunctive relief to stay the Mask Ban.

## Argument

## I.   Plaintiffs Have Demonstrated a Likelihood of Success on the Merits

### A.  The Mask Ban is Preempted by Federal and State Law

The United States Constitution states that it is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Under the requirements of this Supremacy Clause, "a discriminatory state law is not a defense to liability under federal law; it is a *source* of liability under federal law." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 164 (2d Cir. 2013) (quoting *Quinones v. City of Evanston, Ill.*, 58 F.3d 275, 277 (7th Cir. 1995)).

A law is preempted in three circumstances: (1) Congress defines explicitly the extent to which its enactments preempt state or local law, (2) Congress regulates conduct in a field it intends to occupy exclusively, and (3) the lower law conflicts with the higher law. *See Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).

### 1.  The Mask Ban is Conflict Preempted by the ADA and Section 504

A court will find conflict preemption where it is impossible to comply with both state/local and federal requirements, or where the state/local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 79 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 705 (2d Cir.1998) ("An actual conflict also exists 'where federal law is in

irreconcilable conflict with state law.'"). Under the doctrine of preemption, when a federal law

preempts a state or local law, the preempted law ceases to be in effect and is considered void.

*Spiteri v. Russo*, 2013 WL 4806960, at *40 (E.D.N.Y. Sept. 7, 2013), aff'd sub nom. *Spiteri v.*

*Camacho*, 622 F. App'x 9 (2d Cir. 2015).

The Mask Ban stands as a clear and insurmountable obstacle to the accomplishment and

execution of Congress' well-established purposes and objectives of the ADA and Section 504.[1]

The ADA is a remedial statute to be interpreted broadly to fulfill its goal of establishing a clear

and comprehensive national mandate for eliminating discrimination against individuals with

disabilities, allowing people with disabilities to integrate into mainstream life. *PGA Tour, Inc. v.*

*Martin*, 532 U.S. 661, 675 (2001); *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d

63, 68 (2d Cir. 2012).

"In the ADA, Congress provided a broad mandate to effectuate its sweeping purpose to

forbid discrimination against disabled individuals in major areas of public life, including public

services." *Mary Jo. C.*, 707 F.3d at 162-63 (internal quotations, citations, and alterations

omitted).

> Congress found that individuals with disabilities continually encounter various
> forms of discrimination, including outright intentional exclusion, the
> discriminatory effects of architectural, transportation, and communication
> barriers, overprotective rules and policies, failure to make modifications to
> existing facilities and practices. The ADA aims to provide a clear and
> comprehensive national mandate for the elimination of discrimination against
> individuals with disabilities. Title II of the ADA represents Congress' attempt to
> apply this clear and comprehensive national mandate to the services, programs, or
> activities of any State or local government and any department, agency or other
> instrumentality of a State.

---

[1] "Claims of disability discrimination under the ADA are held to essentially the identical standard as is applied under Section 504 of the Rehabilitation Act." *Brown v. Connecticut*, 2010 WL 2220580, at *20 (D. Conn. May 27, 2010) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). Plaintiffs' claims are brought pursuant to both Title II of the ADA and Section 504. In the interest of brevity, Plaintiffs present their arguments using reference to the ADA with the understanding that the standard is the same under either statute.

*Id.* at 162-63 (internal quotations, citations, and alterations omitted).

Plaintiffs must wear masks in public to have equal access to community life. The Mask Ban will expose Plaintiffs to harassment and discrimination and deter them from going out in public in Nassau County. The Mask Ban conflicts with the ADA's mandate because it necessarily subjects individuals with disabilities, like Plaintiffs, to an increased risk of harassment, detainment, or arrest in public.

Defendants cannot enforce the Mask Ban's ban on face coverings in public while simultaneously complying with the ADA. *Montana Med. Ass'n v. Knudsen*, 581 F.Supp. 3d 1232, 1241 (D. Mon. 2022) (finding that plaintiffs plausibly alleged that conflict preemption applied to a statute which prevented reasonable accommodations.). The Mask Ban creates a standard that requires Plaintiffs to justify their need to wear a mask to the subjective satisfaction of law enforcement to be able to be in the community, regardless of their rights under the ADA. Nassau County, N.Y., Miscellaneous Laws of Nassau County Title 91 (effective August 14, 2024).

Plaintiffs are also forced to justify their need to wear a mask to the subjective satisfaction of owners or tenants of private property to be able to enter their property. *Id*. The ADA requires government entities, such as police officers, and businesses open to the public, such as grocery stores, to reasonably accommodate people with disabilities, but the Mask Ban permits a level of intrusion upon a person with a disability that will lead to discrimination because of their disability.

The Mask Ban is conflict preempted by the ADA and is, therefore, void.

### 2. The Mask Ban is Field Preempted by State Law

The Mask Ban is void because it is preempted by New York State's repeal in 2020 of N.Y. Penal Law 240.35(4), which prevented certain mask wearing throughout the state. The doctrine of field preemption applies to local laws that regulate the same subject matter where "a declaration of state policy evinces the intent of the Legislature to preempt local laws on the same subject matter." *Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead*, 91 A.D.3d 126, 135 (2011). Where the local law regulates the same subject matter, it is deemed inconsistent with the State's interest regardless of whether the local law *actually* conflicts with a state-wide statute. *Chwick v. Mulvey*, 81 A.D.3d 161, 169 (2010) (emphasis in original). "Such local laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns." *Id.* (internal citations omitted).

In May 2020, New York passed legislation that permanently repealed N.Y. Penal Law 240.35(4), a nearly 200-year-old law that made it a criminal violation for groups of individuals to wear masks in public. New York Senate Bill S8415. The State Legislature withdrew N.Y. Penal Law 240.35(4) with clear and explicit intent to allow people to wear masks in public as is necessary for the health and safety of the community, and to remove any threat of criminal prosecution from masking in public.[2] Nassau County's Mask Ban not only impedes this repeal, it directly conflicts with the State's policy interest to protect the health and safety of all New Yorkers. The Mask Ban is field preempted and, therefore, void.

---

[2] Assemblyman Dan Quart stated, "[i]f we are to stop the spread of COVID-19, we must ensure that everyone feels safe wearing a mask in public, without the threat of arrest, prosecution, or worse." https://ag.ny.gov/press-release/2020/attorney-general-james-applauds-repeal-law-criminalizing-group-mask-use-public (last visited August 15, 2024).

### B.  The Mask Ban Violates the ADA and Section 504

The Mask Ban harms Plaintiffs by depriving them of access to public life without fear of harassment, intimidation, detainment, and arrest. This deprivation violates the ADA's mandate that people with disabilities be provided equal access to the programs, services, and activities offered by and within Nassau County.

To establish a claim of discrimination under Title II of the ADA, G.B. and S.S. must demonstrate that (1) they are a "qualified individuals" with disabilities; (2) that the Defendants are subject to the ADA; and (3) that Plaintiffs were denied the opportunity to participate equally in or benefit equally from Defendants' services, programs or activities, by reason of their disability. *See Henrietta D.*, 331 F.3d at 272.

### 1.  Plaintiffs are Qualified Individuals with Disabilities

Plaintiffs are qualified individuals with disabilities because they have disabilities and want to equally participate in and benefit from daily life in Nassau County while wearing a mask. The term qualified individual with a disability means "an individual with a disability, who with or without reasonable modifications to rules, policies or practices…meets the essential eligibility requirements for the…participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Under the ADA, an individual has a disability if he has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A)(B). Plaintiff G.B. has cerebral palsy and asthma, and uses a wheelchair to ambulate. G.B. Aff. ¶¶ 4-5. Plaintiff S.S. has common variable immunodeficiency (CVID), kidney disease, and respiratory impairments. S.S. Aff. ¶ 4. These disabilities impact major life activities, like breathing, immune response, and walking. *See* 29 C.F.R. § 1630.2(i)(1)(i).

9

Plaintiffs "meet the essential eligibility requirements" to benefit from this government service. *See Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 640 (S.D.N.Y. 2013). Plaintiffs live in Nassau County. They are members of the community and use community resources and attend community businesses. *See generally* S.S. Aff., G.B. Aff. They seek to go into parks, shops, restaurants, and other places within Nassau County. *Id.* They intend to go to these places while wearing face masks to manage their disabilities but may also avoid going into public unless necessary. *See* G.B. Aff. ¶ 21, S.S. Aff. ¶¶ 25, 35. They are subject to the Mask Ban anytime they leave their homes to visit places within Nassau County. Plaintiffs are unquestionably qualified individuals with a disability under the ADA.

### 2.  Defendants are a Public Entity Subject to Title II of the ADA

Title II of the ADA covers any "public entity," meaning "(A) any State or local government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Section 504 covers the programs or activities of all recipients of federal financial assistance. 29 U.S.C. § 794(b).

Defendant Nassau County is a local government body, accepts federal funding, and is subject to Title II of the ADA and Section 504 anti-discrimination laws and regulations. *Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 604 (E.D.N.Y. 2010). Defendants are required to comply with the ADA and Section 504.

### 3.  The Mask Ban Discriminates Against Plaintiffs Based on Their Disabilities

Plaintiffs need to wear masks while outside of their homes to protect their health and the health of others. They require unrestricted access to face masks so they can have equal access to the programs, services, and activities of Nassau County. Plaintiffs face discrimination and

harassment because of the Mask Ban. They will fall victim to the subjective interpretation and application of the Mask Ban.

Defendants engage in unlawful disability-based discrimination through the Mask Ban. Under the ADA and Section 504, a public entity may not, in providing any aid, benefit, or service, "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service[,] . . . that is not equal to that afforded others[,]" or "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]"  28 C.F.R. §§ 35.130(b)(1)(i)-(iii); *accord* 45 C.F.R. § 84.4(b)(1)(ii)-(iii). Title II of the ADA "imposes affirmative obligations on public entities and does not merely require them to refrain from intentionally discriminating against the disabled." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 910 (6th Cir. 2004).

The ADA also prohibits "association discrimination," making it unlawful to discriminate against an individual, whether disabled or not, because of a relationship or association with an individual with a disability. 28 C.F.R. § 35.130(g). The Mask Ban provides no exception for those wearing a mask to protect the health and safety of others. Plaintiffs, therefore, experience an additional layer of discrimination because the Mask Ban prohibits their friends and family from wearing a mask to protect them. The Mask Ban makes Plaintiffs' friends, family, and caregivers less likely to wear masks in public because they face jail time and/or a fine if they do.

The Mask Ban denies Plaintiffs' non-discriminatory access to the public sphere in Nassau County. The Mask Ban forces people who wear masks in Nassau County to make "either/or" choices: (1) being forced out of in-person interactions altogether, (2) wearing a mask in public

and facing the subjective biases of law enforcement and possible criminal prosecution, or (3) taking greater health and safety risks than their non-disabled peers by not masking in public. Forcing such a choice is impermissible under the ADA. *See, e.g. Arc of Iowa v. Reynolds,* 24 F.4th 1162, 1181 (8th Cir.) (forcing a plaintiff into an "either/or choice" provides an adequate injury under the ADA), *reh'g granted and opinion vacated,* No. 21-3268, 2022 WL 898781 (8th Cir. Mar. 28, 2022), *and vacated,* 33 F.4th 1042 (8th Cir. 2022) (vacated as moot because "the current conditions differ vastly from those prevailing when the district court addressed it.").

The deprivation of access to public life is a present and ongoing injury to Plaintiffs. The Mask Ban violates the ADA because it denies the equal opportunity to participate in and benefit from a government service, program, or activity: public life. The Mask Ban deters Plaintiffs from engaging in all aspects of public and private life outside their homes because they fear how both members of the public and police will react to them wearing masks in public. Should Plaintiffs decide to leave their homes, they face immediate and unavoidable risks that their non-disabled peers do not. They risk their and their families' health and well-being should they not mask to protect themselves and those around them from airborne diseases or they risk harassment, detainment, and potential arrest should they mask even for their very legitimate health reasons.

## II.     Plaintiffs Will Suffer Irreparable Harm if a Preliminary Injunction is not Granted

The showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *People of New York ex rel. Spitzer v. Cty of Delaware*, 82 F. Supp. 2d 12, 16 (N.D.N.Y. 2000) (quoting *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)). "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'" *Galusha v. New*

*York State Dep't of Envtl. Conservaation*, 27 F. Supp. 2d 117, 122 (N.D.N.Y. 1998) (quoting *Tom Doherty Assocs. Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995)).

"In evaluating whether the plaintiff will suffer imminent harm, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are adequate to compensate for that injury." *Martinez v. Cuomo*, 459 F. Supp. 3d 517, 526 (S.D.N.Y. 2020) (citing *Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir. 2010) (internal quotation marks omitted)); *Mint, Inc. v. Amad*, 2011 WL 1792570, at *1 (S.D.N.Y. May 9, 2011). Plaintiffs seeking preliminary relief are required to demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 20.

The harm to Plaintiffs absent the requested relief is both imminent and irreparable. Every day that the Mask Ban remains in effect, Plaintiffs are forced to choose between being isolated in their homes or risking health, safety and being accosted by police or other citizens by going out into public with a face mask. The Mask Ban places Plaintiffs at risk in every aspect and moment of their lives and in every way deprives them of equal access to the world outside their own homes.

The risks that Plaintiffs face should they choose to leave their homes are very real. Plaintiffs may contract an airborne disease which could result in their or a loved one's death should they leave their homes without a mask. *Covid-19 Wastewater Surveillance*, N.Y. State, https://coronavirus.health.ny.gov/covid-19-wastewater-surveillance (last updated Aug. 15, 2024). In addition, should Plaintiffs choose to mask when they venture out, they risk harassment by property and business owners who do not permit mask wearing on their private property and emboldened people in public "enforcing" the law. They also face imminent threat of detainment

13

and arrest by a police force charged with determining a mask-wearer's intent. *See Power and Politics: Mask ban fallout; development of Riverhead waterfront*, NEWS 12 LONG ISLAND (Aug. 11, 2024) https://longisland.news12.com/power-and-politics-mask-ban-fallout-development-of-riverhead-waterfront (Mask Ban sponsor Legislator Mazi Pilip explaining that the "bill gives our law enforcement the opportunity to engage in the conversation. If people is walking with mask, the police can see what is their intention."); *see also Will Nassau County implement a mask ban?*, FOX 5 NEW YORK (July 12, 2024) at 0:52-1:00, https://www.fox5ny.com/video/1484612; Mazi Melesa Pilip (@maziourlegislator), *Smile for the camera*! INSTAGRAM (Aug. 14, 2024), https://www.instagram.com/reel/C-p64DaxeQz/?igsh=YXozMThpd3Bna3Aw.

The wearing of a mask provides law enforcement with reasonable suspicion to question Plaintiffs about wearing a mask. Law enforcement is tasked with determining the "intent" of wearers and if they are exempt from the Mask Ban's prohibition on face coverings. NASSAU COUNTY, N.Y., MISCELLANEOUS LAWS OF NASSAU COUNTY TITLE 91 (effective August 14, 2024). (No person shall wear a mask "with the intent to conceal the identity of the wearer…."). Should Plaintiffs leave their homes wearing masks and encounter police or property owners who question their "intent," they may be required under the Mask Ban to risk their health by removing their mask. *Id.* ("A law enforcement officer may *require* a person or persons to remove the mask during traffic stops or when the officer has reasonable suspicion of criminal activity and/or intention to partake in criminal activity.").

Plaintiffs will refuse to remove their masks even at the order of law enforcement because doing so would compromise their health or the health of their friends and families. *See supra*, Statement of Facts.

14

Some of Plaintiffs' disabilities are not apparent leaving no way for police to determine why they are wearing a mask without questioning them. All masks and face coverings are subject to the ban because the Mask Ban does not define the term. An email from Legislator Scott Strauss sent on August 9, 2024, in support of the Mask Ban used an image with the Nassau County Seal on it that depicts a medical face mask with a slash through it, shows an individual in a medical face mask, and calls people wearing medical face masks "thugs:"



S.S. Aff. ¶¶ 28-30, Exhibit A.

Plaintiffs also face harassment and assault from members of the public committed to enforcement of the Mask Ban. Even with appropriate and widespread messaging to support those who wear masks for a disability-related purpose, there will be public altercations or inappropriate interactions in public or private settings. *See infra*; Dkt. 1. The law allows restaurants, stores, or other retail establishments to confront Plaintiffs about wearing masks. Property and business owners can conclude that it is unlawful for them to be wearing a mask, even when Plaintiffs' only intent is to protect their health or the health of those with whom they are associated.

This harm is not hypothetical. The Nassau County Legislative Hearing that took place on August 5, 2024, is a prime example of how the public and law enforcement will approach Plaintiffs and others who mask for health and safety reasons. A DRNY attorney attended the

Hearing to provide comment in opposition to the Mask Ban. Tronsor[3] Aff. ¶ 1. He witnessed

people with disabilities wearing masks being yelled at and threatened by others in the crowd.

Tronsor Aff. ¶¶ 22-30. People wearing masks were recorded, asked invasive questions, and

coughed on by people in favor of the Mask Ban. *Id.* When the DRNY attorney asked the

chairman at the Hearing to stop the harassment in the crowd, the chairman threatened to have

police detain him. Tronsor Aff. ¶¶ 37-43.

A representative of Jews for Mask Rights provided their account of the events and

harassment at the Hearing in an online post about their experience:

> Throughout the nearly seven-hour hearing, masked attendees were subjected to
> ongoing harassment. Some immunocompromised individuals were intentionally
> coughed on. Ban supporters told mask-wearers they couldn't wait for their masks
> to be removed. Ban supporters pointed at, laughed at, and filmed disabled
> attendees. They made discriminatory remarks, even yelling out to arrest those in
> masks. Ban supporters harassed at least one speaker on their way out of the
> building. Law enforcement and government officials made minimal attempts to
> curb the vitriol, which only emboldened those perpetuating it.

*Anti-Mask Harassment at Nassau County's Mask Ban Hearing*, JEWS FOR MASK RTS. (Aug. 6,

2024), https://www.jewsformaskrights.com/resources/anti-mask-harassment-nassau-countys-

mask-ban-hearing. The harassment at the Hearing prompted additional harassment of mask

wearers on social media. *See e.g.*, Richwalder Aff. Exhibit A.

One individual wrote into a local newspaper with a call to action for citizen enforcement

of the Mask Ban:

> As a concerned and patriotic citizen, I think it's my civic duty to help enforce the
> law. I also think that my fellow citizens should help where they can. Since most of
> us today have cellphones with cameras, when we see a crime, we should take a
> picture or video and send it to the police. So, we should start taking pictures of
> people wearing masks and send them to the police. Obviously, we shouldn't try to
> make any arrests. These may be criminals who are armed and dangerous. A little
> old lady with a walker could be in costume.

---

[3] DRNY employee William Tronsor is not identified by a pseudonym because he was identified in public record
during his testimony on the Mask Ban, and because he is counsel on this case.

Randy Perlmutter, *Letter to the Editor*, Newsday, Aug. 20, 2024, at A21.

Absent immediate injunctive relief, no legal remedy can turn back time and give Plaintiffs safe and equal access to the world outside their homes. No post injury remedy could ever compensate Plaintiffs if they or their families are unnecessarily exposed to a disease because they could not mask, or if they are unnecessarily stopped, questioned, or detained by police because they wore a face mask.

### III.    The Balance of Hardships Weighs Heavily in Plaintiffs' Favor

"When confronted with a motion for a preliminary injunction, a court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter,* 555 U.S. at 24). "Plaintiffs must establish that the 'balance of hardships tips in their favor regardless of the likelihood of success.'" *Id.* at 262 (quoting *Salinger,* 607 F.3d at 79–80).

There is no hardship on Nassau County if the Mask Ban is withdrawn. The legislative intent of the Mask Ban is "to prohibit the wearing of masks or other facial covering in public" because the "Legislature finds that masks and facial coverings…are often used as a predicate to harassing, menacing or criminal behavior." NASSAU COUNTY, N.Y., MISCELLANEOUS LAWS OF NASSAU COUNTY TITLE 91 (effective August 14, 2024). There is no foundation for alleged fears that masked protestors and agitators are causing chaos, threatening illegal behavior, or committing crimes in Nassau County.

At the August 5th Hearing, Police Commissioner Patrick Ryder provided testimony.[4] *See* Nassau County Legislature Full Legislative Meeting, https://www.nassaucountyny.gov/

---

[4] A recording of Commissioner Ryder's testimony, and the entire legislative session, is available here: https://vimeo.com/event/4485832. Commissioner Ryder begins speaking at approximately 3:00:00.

AgendaCenter/ViewFile/Item/3195?fileID=248709, (August 5, 2024), at 135-190 (hereinafter "Legislative Meeting"). During his testimony, he stated that in spring 2020, a time when most people outside their homes were masking for health reasons, there were more than 300 protests in Nassau County following the death of George Floyd with zero incidents of violence, no charges of criminal mischief, and no arrests. Legislative Meeting at 135-36. He testified that following the events in Israel in October 2023, there have been over 100 protests in Nassau County, and reported there have been no violent incidents or issues that required Nassau County Police intervention during these events. Legislative Meeting at 138; 142-43. He reported that crime in Nassau County is down fifteen percent. Legislative Meeting at 138.

Commissioner Ryder's testimony did not conclude face masks worn by people in Nassau County pose an actual danger; nor did he or anyone else testifying explain why masks are outlawed, but sunglasses and hats remain legal even though studies prove they are more effective at hiding one's identity. Eilidh Noyes et al, *The Effect of Face Masks and Sunglasses on Identity and Expression Recognition with Super-Recognizers and Typical Observers*, 8 Royal Soc'y Open Sci., (Mar. 24, 2021), https://royalsocietypublishing.org/doi/epdf/10.1098/rsos.201169; Charles C.-F. Or et al, *Face Masks are Less Effective than Sunglasses in Masking Face Identity*, 13 Sci. Rep. 4284 (Mar. 15, 2023), https://doi.org/10.1038/s41598-023-31321-4. Nassau County will feel no hardship if the Mask Ban is not enforced because Defendants cannot demonstrate its local law is necessary to prevent crime.

If the Mask Ban remains in effect, it will cause irreparable hardship to the Plaintiffs. Not only do they face harassment and unchecked discrimination by police and the public, but they also face prosecution if they venture out with companions who are also masked. NASSAU COUNTY, N.Y., MISCELLANEOUS LAWS OF NASSAU COUNTY TITLE 91 (effective August 14,

2024). Plaintiffs are forced to stay in their own homes to avoid threats and discrimination, unable to complete even the most basic daily tasks without risking their health and safety or the health and safety of their friends and families.

The effect on Plaintiffs in denying this motion is substantial and irreparable. Exclusion from public life is demeaning, and forcing individuals with disabilities to venture out without a face mask could be life-threatening. This type of isolation is the antithesis of the ADA. *See Olmstead v. L.C.*, 527 U.S. 581, 600-01 (1999) ("Recognition that unjustified institutional isolation of persons with disabilities is a form of discrimination reflects two evident judgments. First, [segregation] of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life. Second, [segregation] severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment."). The balance of hardships weighs heavily in Plaintiffs' favor.

## IV.    The Mask Ban is Contrary to Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)). "[T]he court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (quoting *eBay Inc. v. Mercexchange LLC.*, 547 U.S. 388, 391 (2006) (internal quotations omitted)).

As explained above, this law does not address any genuine threat to public safety, and unapologetically contradicts the U.S. Constitution and preemptive federal and state laws. *See*

*generally,* Legislative Meeting at 108-219 (dialogue among Nassau County Legislatures discussing the bill as proposed by the legislative majority and the counter bill proposed by the legislative minority). The Mask Ban poses a genuine threat to the health and safety of the Plaintiffs and the community.

Face masks are an important tool to protect against infectious diseases. The United States is currently experiencing a COVID wave, with infection rates increasing across the whole country. [5] Additionally, the Centers for Disease Control and Prevention recently asked "health departments to distribute existing PPE stocks to farm workers" in anticipation of a potential H1N1 (bird flu) outbreak in humans.[6] Masks do not merely protect people from airborne disease. Wildfire smoke drifting in from Canada forced many New Yorkers to wear masks to protect themselves at the encouragement of government officials last week and in the summer of 2023.[7]

---

[5] Klein, Kaity, *COVID is on the rise this summer. Here's why and what else you should know*, NPR, August 15, 2024, https://www.npr.org/2024/08/15/nx-s1-5075060/covid-summer-wave-variants-vaccine; Fenit Nirappil & Lizette Ortega, *Covid summer wave spreads across U.S., even infecting Biden*, WASH. POST, July 18, 2024, https://www.washingtonpost.com/health/2024/07/18/biden-covid-summer-wave-symptoms-flirt-variant/.

[6] U.S. Department of Agriculture, *USDA, HHS Announce New Actions to Reduce the Impact and Spread of H5N1*, May 5, 2024, https://www.usda.gov/media/press-releases/2024/05/10/usda-hhs-announce-new-actions-reduce-impact-and-spread-h5n1.

[7] *See, e.g.*, Gov. Kathy Hochul, *Public Safety Message*, August 16, 2024, https://www.governor.ny.gov/news/governor-hochul-urges-new-yorkers-take-appropriate-precautions-smoke-canadian-wildfires-0;  Eduardo Cuevas, *Should New Yorkers be Wearing Face Masks Outside? NY Experts Say Yes. Here's Why*, LOHUD.COM, Jun. 7, 2023, https://www.lohud.com/story/news/2023/06/07/nyc-wear-face-masks-if-people-must-go-outside-amid-wildfire-smoke/70297465007/ ("'For people who must be outdoors, a high-quality mask, like an N95, KN95 or KF94, is recommended,' Dr. Ashwin Vasan, commissioner of the New York City Department of Health and Mental Hygiene, told reporters."); NYC Health, *Guidance of Mask Use When Outdoor Air Quality Is Poor Due to Air Pollution from Wildfire or Other Smoke*, https://www.nyc.gov/assets/doh/downloads/pdf/eode/mask-guidance-smoke.pdf (last visited Aug. 1, 2024); New York State, *Governor Hochul Announces One Million N95 Masks to be Made Available to New Yorkers as Effects of Canadian Wildfires Continue to Impact Air Quality in New York State*, Jun. 7, 2023, https://www.governor.ny.gov/news/governor-hochul-announces-one-million-n95-masks-be-made-available-new-yorkers-effects-canadian ("'Every part of New York State has experienced unhealthy air quality in the last 24 hours as a result of Canadian wildfires, and our number one priority right now is keeping New Yorkers safe,' Governor Hochul said. 'Prolonged exposure to this harmful air will cause negative health impacts, which is why we're making high-quality masks available at high-traffic areas across New York.'"); Dan Diamond, *NYC Tells Vulnerable Residents to Mask Up as Wildfire Smoke Engulfs City*, THE WASHINGTON POST, Jun. 7, 2023, https://www.washingtonpost.com/weather/2023/06/07/nyc-mask-guidance-air-quality-canada-wildfire/.

The public interest of those in Nassau County and across New York State is served by allowing individuals to mask when they choose without fear of reprisal. Plaintiffs' interests align with that of the public.

## Conclusion

For all the above reasons, this Court should issue a temporary restraining order and subsequent preliminary injunction granting Plaintiffs' request for a stay in enforcement of the Mask Ban in Nassau County.

Dated: August 22, 2024

Rensselaer, New York

By:

Jessica Richwalder, Esq.
Christina Asbee, Esq.
William Tronsor, Esq.

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiffs
279 Troy Rd., Ste 9
PMB 236
Rensselaer
Phone:  518-512-4841
Fax:  518-427-6561 (not for service)