UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

| | |
|---|---|
| G.B.; S.S., and individuals similarly situated,<br><br>                                     Plaintiff,<br>-against-<br><br>NASSAU COUNTY, NASSAU COUNTY EXECUTIVE BRUCE BLAKEMAN, in his official capacity<br><br>                                    Defendants. | 24-CV-5884<br>(JMA)(SIL)<br><br>DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND A TEMPORARY <u>RESTRAINING ORDER</u> |

-------------------------------------------------------------------- X

 

**Submitted by:**

**BRIAN P. MCLAUGHLIN, ESQ**.
Deputy County Attorney
1 West Street
Mineola, NY 11501.

**Dated and Served: September 4, 2024**

<a>
</a>
<a>
</a>

MEMORANDUM OF LAW
TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

    I.     PRELIMINARY STATEMENT ..................................................................................1

    II.    PLAINTIFFS LACKS STANDING TO BRING THIS ACTION ................................3

    III.   PLAINTIFFS FAIL TO MEET THE STANDARD FOR A PRELIMINARY
           INJUNCTION OR TEMPORARY RESTRAINING ORDER ....................................6
           A.  Plaintiffs are Unlikely to Succeed on the Merits .......................................................6
                 i.   The MTA does not Conflict with or Violate the MTA ...............................6
                ii.   The MTA is not Field Preempted by State Law ........................................8
           B.  Plaintiffs Have Failed to Establish the Element of Irreparable Harm .....................9
           C.  The Balance of Hardships Weighs in the County's Favor.....................................10
           D.  Enforcing the MTA is in the Public Interest............................................................11

    IV.   CONCLUSION..............................................................................................................12

TABLE OF AUTHORITIES

**Cases:**

*Bronx Household of Faith v. Bd. of Educ.*
    331 F.3d 342 (2d Cir. 2003)..................................................................................................6

*Brown v. Texas*,
    443 U.S. 47 (1979) ...............................................................................................................11

*Chwick v. Mulvey*,
    81 A.D.3d 161 (2d Dep't 2010) ............................................................................................9

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)......................................................................................................... 4-5, 7

*Corbett v. Hochul*,
    No. 22-3210-cv, 2023 U.S. App. LEXIS 30200 (2d Cir. Nov. 14, 2023) ..........................3

*Dep't of Educ. v. Brown*,
    600 U.S. 551, 560 (2023) ......................................................................................................3

*De Veau v. Braisted*,
    363 U.S. 144, 155 (1960) ....................................................................................................11

*eBay Inc. v Mercexchange LLC,*
    547 U.S. 388 (2006)............................................................................................................11

*Galusha v. New York State Dep't of Envtl. Conservation*,
    27 F. Supp. 2d 117, 122 (N.D.N.Y. 1998)...........................................................................9

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003).................................................................................................7

*Kosiba v. Cath. Health Sys. Of Long island, Inc.*,
    2024 U.S. App. LEXIS 14627 (2d Cir. 2024) ....................................................................7

*Ligon v. City of New York*,
    925 F. Supp. 2d 478 (S.D.N.Y. 2013) .................................................................................6

*Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.,*
    103 F. Supp. 3d 244, (N.D.N.Y 2015).............................................................................10

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)..............................................................................................................4

*Nicosia v. Amazon.co, Inc.*
    834 F.3d 220, 239 (2d Cir. 2016). ...................................................................................3

*People of New York ex rel. Spitzer v. Cty of Delaware*,
    82 F. Supp. 2d 12, 16 (N.D.N.Y. 2000) ............................................................................9

*Schall v. Martin*,
    467 U.S. 253 (1984) ........................................................................................................11

*Soule v. Conn. Ass'n of Sch.*,
    57 F.4th 43 (2d Cir. 2022) ................................................................................................4

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ..........................................................................................................3

*Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead,*
    91 A.D.3d 126 (2d Dep't 2011) ........................................................................................9

*Valenti v. Massapequa Union Free Sch. Dist.*,
    2006 U.S. Dist. LEXIS 62899 (E.D.N.Y. 2006) ..............................................................8

**Statutes:**

Americans With Disabilities Act. ........................................................................................ *passim*

Rehabilitation Act of 1973 § 504. ...................................................................................................6

N.Y. Penal Law § 240.35. ..........................................................................................................9, 11

Miscellaneous Laws of Nassau County Title 91 ........................................................................7, 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
G.B.; S.S., and individuals similarly situated,

                                      Plaintiff,

                -against-

NASSAU COUNTY, NASSAU COUNTY EXECUTIVE BRUCE BLAKEMAN, in his official capacity

                                    Defendants.
------------------------------------------------------------------------ X

24-CV-5884 (JMA)(SIL)

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER

## I. PRELIMINARY STATEMENT

Defendants COUNTY OF NASSAU ("NASSAU")(i/s/h/a NASSAU COUNTY), and NASSAU COUNTY EXECUTIVE BRUCE BLACKEMAN ("BLAKEMAN") by their attorney Thomas A. Adams, Nassau County Attorney, by Brian P. McLaughlin Esq., Deputy County Attorney, hereby oppose Plaintiffs' motion seeking a temporary restraining order and mandatory preliminary injunction staying enforcement of the Mask Transparency Act ("MTA") in Nassau County, as the motion is baseless and should be denied in its entirety.

It should be noted from the outset that Plaintiffs have no standing to bring this litigation as they are not under any risk or threat of harm, harassment or discrimination under the MTA, which contains an explicit carve out stating that the law "shall not apply to facial coverings worn to protect the health and safety of the wearer," such as the masks worn by Plaintiffs. Therefore, while Plaintiffs stuff their papers with speculations and imaginings of possible harms that could be visited upon them by NASSAU, they fail to identify any concrete examples of same that have actually occurred since the MTA was enacted, likely because Plaintiffs are expressly exempt under the law. Since Plaintiffs' extensive musings on potential discrimination are directly refuted

1

by the very text of the law they seek to challenge, their allegations of imagined future harms should be disregarded by the Court as the speculative fictions they are. Rather, Plaintiffs' failure to demonstrate any real injury resulting from the MTA only highlights their own lack of standing to bring this litigation at all, including the present motion.

Even if Plaintiffs had standing, here, they fail to satisfy the standard for a preliminary injunction or temporary restraining order. Firstly, there is no likelihood that Plaintiffs will ultimately succeed on the merits in this litigation. There is no conflict, violation or other incongruity between the MTA and any section of the ADA, which is silent on the subject of masks, and Plaintiffs efforts to concoct such a conflict stretch the bounds of credulity and verbal gymnastics. As for state law, as Plaintiffs admit, any state law on the subject of masks has been repealed, and so the argument that the entire "field" of mask legislation is pre-empted by state law is facially preposterous.

Second, as discussed above, Plaintiff cannot demonstrate *any* harm they will endure under the MTA, irreparable or otherwise, as they are expressly exempt under the law.

Third, as Plaintiffs are unable to demonstrate any *legitimate* hardships they have or will face under the MTA, the balance of those hardships cannot possibly weigh in their favor. Rather, it is NASSAU, which finally passed this legislation after extensive debate as an important crime prevention measure which would face a hardship if they are enjoined from enforcing this law.

Finally, there is a strong public interest in favor of enforcing the MTA as it is intended as a crime prevention measure introduced to better protect NASSAU's public.

Given that Plaintiff has failed to establish any factors required for a preliminary injunction or temporary restraining order, the present motion should be denied in its entirety.

Defendants raise no opposition to Plaintiffs' Statement of facts regarding the MTA, other than to clarify that the legislation is called The Mask Transparency Act and not "the Mask Ban." As for the Plaintiffs' statements of fact regarding themselves, Defendants lack knowledge or information to offer any substantive objection to same.

## II.  PLAINTIFFS LACK STANDING TO BRING THIS ACTION

Before addressing the substance of Plaintiffs' motion, Defendants must stress that Plaintiffs' lack standing to bring this litigation at all. "Standing is the threshold question in every federal case." *Corbett v. Hochul*, No. 22-3210-cv, 2023 U.S. App. LEXIS 30200, at *3 (2d Cir. Nov. 14, 2023). The Supreme Court observed that the courts "have an obligation to assure ourselves of litigants' standing under Article III before proceeding to the merits of a case." *Dep't of Educ. v. Brown*, 600 U.S. 551, 560 (2023).

It is axiomatic that federal Courts only have the power to resolve "cases" and "controversies." *Nicosia v. Amazon.co, Inc.* 834 F.3d 220, 239 (2d Cir. 2016). Accordingly, to establish that one has a legitimate "case" or "controversy," a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016).

Here, by their own admission, Plaintiffs have suffered no injury, and certainly none that can be "fairly traceable to the challenged conduct of the Defendants." S.S. alleges receiving "sneering looks" from members of the public, but even if such looks amounted to an injury-in-fact, which they do not, S.S. makes it clear that these looks came from members of the public and not the Defendants. Further, these looks were received prior to the enactment of the legislation at issue here, and therefore can obviously not be traced back to same. The same can

3

be said for the mass email Legislator Scott Strauss sent prior to the enactment of the MTA, to provide members of the public information about the legislation. As for after the MTA was enacted, S.S. has not identified any injuries, harassment or discrimination they have endured. Rather, they simply speculate on fears about what *might* happen, while failing to identify anything that actually *has* happened. Likewise, G.B. only mentions being approached by "strangers" as opposed to Defendants or any employee or agent acting on behalf of Defendants. Beyond these vague interactions, which also occurred before the MTA was enacted, G.B., like S.S., can only speculate about fears of future harm unsubstantiated by any fact.

Such speculative concerns cannot rise to the level of an injury-in-fact. *Soule v. Conn. Ass'n of Sch.*, 57 F.4th 43 (2d Cir. 2022) (holding that speculation about potential future injuries is insufficient to establish an injury-in-fact supporting a plaintiff's standing, especially where those potential future injuries were dependent upon the discretion of unknown persons). While cases seeking federal relief inclusive of preliminary injunctions can consider "imminent" injuries, *Monsanto Co. v. Geertson Seed farms*, 561 U.S. 139 (2010), "imminence… cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Accordingly, the Supreme Court has repeatedly held that a "threatened injury must be certainly impending to constitute injury in fact" and that, by contrast, "allegations of possible future injury are not sufficient." *Id.* In *Clapper*, a class of attorneys and other human rights workers in the United States challenged a section of the Foreign Intelligence Surveillance Act, arguing that it presented imminent harm of subjecting their communications with foreign persons to government surveillance. The Supreme Court held that plaintiffs' theory failed to establish an injury-in-fact sufficient to support standing, explaining that the question of whether

4

plaintiffs actually would be targeted by government surveillance remained entirely speculative, especially given the lack of any concrete evidence that plaintiffs had actually been targeted, or even approached, by the government. *Id.* at 410-11 The Court also held that the alleged injury could not be deemed imminent since it was dependent upon the exercise of discretion by state actors. *Id.* at 413-14.

The explanation offered by the Supreme Court in *Clapper* perfectly illustrates how Plaintiffs here have failed to demonstrate an injury-in-fact traceable to the MTA. Plaintiffs here have failed to allege that they have been even approached by a police officer or other County employee or agent with regard to their masks, much less been under threat of detainment or prosecution. Further, Plaintiffs have offered no evidence to support their speculative fears. The screenshots of internet comments attached as exhibits to their motion only show comments received from anonymous members of the public, and not anyone acting on behalf of NASSAU. Likewise, the extensive review of arguments that occurred at the public hearing for the proposed MTA are of no moment because the events of a heated political debate that occurred before the MTA was enacted cannot, by definition, be fairly traceable to the MTA itself since its enactment. Also, Plaitiff's speculative fears of being potentially approached by a police officer enforcing the MTA makes tremendous assumptions regarding the discretion of those officers, especially in light of the explicit exemption for persons, such as Plaintiffs, who wear masks for reasons of health and safety.

Given the clear applicability of *Clapper*'s holdings to the present case, as well as Plaintiffs' failure to demonstrate any actual harm presented to them since the enactment of the MTA, Plaintiffs lack standing as a matter of law, warranting denial of the present motion, as well as dismissal of this entire litigation.

### III. PLAINTIFFS FAIL TO MEET THE STANDARD FOR A PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER

While Plaintiffs correctly set forth the elements typically required for a preliminary injunction and/or temporary retraining order in their brief, Defendants contend that Plaintiffs' request requires application of the heightened standard of "'clear' or 'substantial' likelihood of success on the merits." *Bronx Household of Faith v. Bd. of Educ.* 331 F.3d 342 349 (2d Cir. 2003). After all, Plaintiff is seeking to block enforcement of a currently enacted County Law, and therefore clearly seeks to alter the current status quo. *See Ligon v. City of New York*, 925 F. Supp. 2d 478, 486 (S.D.N.Y. 2013). Regardless, under either standard, Plaintiffs have failed to establish those elements in their favor. That is, it is unlikely that they will succeed on the merits given their theory that the MTA conflicts with or violates the ADA, which is silent on the subject of masks, or is pre-empted by state law, given the current lack of *any* state law concerning masks. Second, as discussed at length above, Plaintiffs have failed to demonstrate that the MTA presents any risk of irreparable harm to Plaintiffs. Third, the Plaintiffs face no hardships under the MTA other than those invented in their own minds, while NASSAU will be prevented from enforcing an important crime prevention statute. Likewise, an injunction would be contrary to public interest as it would merely serve to prevent NASSAU from enforcing a statute designed to fight crime and protect the public.

**A. Plaintiffs are Unlikely to Succeed on the Merits**

i. <u>The MTA Does not Conflict With or Violate the ADA</u>

Plaintiff's claims that (1) it is impossible to comply with the MTA and ADA simultaneously and (2) that the MTA is an obstacle to the full purposes and objectives of the ADA does not hold up under even the lightest of scrutiny. On Plaintiffs' related argument that the MTA directly violates the ADA and Section 504 of the Rehabilitation Act, Defendants

6

concede that Plaintiffs are Qualified Individuals with Disabilities and that Defendants are subject to the ADA. However, Plaintiffs still have not established that the MTA has denied them the opportunity to participate equally in or benefit equally from NASSAU's services, programs or activities, by reason of their disability, as required to establish a violation of the ADA. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Not only does the MTA not discriminate against Plaintiffs as disabled individuals, it actually includes an explicit carve-out exempting Plaintiffs from liability under the statute as persons who wear masks for reasons of health and safety. *See* Miscellaneous Laws of Nassau County Title 91.

Accordingly, under the plain language of the statute, nothing in the MTA prevents Plaintiffs from wearing masks and having equal access to community life. Again, Plaintiffs arguments to the contrary are entirely based upon unsubstantiated fears of harassment, detainment or arrest, none of which have actually occurred. Plaintiff's argument that they might have to justify their health need for the mask to a police officer or private property owner, without a concrete example of such an interaction actually occurring, is far too speculative and dependent upon the discretion of that imagined police officer to serve as any legitimate basis for a claim of discrimination. *Clapper*, 568 U.S. at 409-13. Further, even if such interactions occurred, *anyone* wearing a mask would potentially be subject to same; not just disabled individuals. After all, the language of the statute is directed at mask wearers in general, and does not single out disabled persons for any heightened level of enforcement; so Plaintiff's discrimination allegations are hollow. *See Kosiba v. Cath. Health Sys. of Long Island, Inc.*, 2024 U.S. App. LEXIS 14627 at *2-3 (2d Cir. 2024). If anything, the statute exempts disabled persons from enforcement given the carve-out for health and safety-related masks. To the extent

7

Plaintiffs are concerned that any private property owners will subject them to discrimination, they have not provided any concrete examples of same, nor are any such owners party to this action.

Plaintiffs argument that the MTA could prevent their friends, family members or caregivers from wearing a mask is immaterial to this action as those friends, family members or caregivers are not parties to this action. That is, a claim for "association discrimination" is a claim for the individual associating with a disabled person, not a claim by the disabled person themselves. *See Valenti v. Massapequa Union Free Sch. Dist.*, 2006 U.S. Dist. LEXIS 62899 (E.D.N.Y. 2006).

Plaintiffs' claim that the MTA forces them to make an "either/or" choice is belied by Plaintiff's own brief. That is, Plaintiffs admit they are *not* forced into choosing between only (1) being forced out of in-person interactions and (2) taking a greater health and safety risk than non-disabled peers by not masking in public, because there is actually a third choice available to them, which is to simply continue wearing a mask in public. Plaintiffs attempt to cast this third choice in a negative light by arguing they would face the subjective biases of law enforcement personnel and possible prosecution, but as discussed above, these fears are far too speculative to serve as a valid predicate for this litigation. It should also be mentioned that, in addition to Plaintiffs' here not facing a true "either/or" scenario, Plaintiffs' sole legal citation for an "either/or" choice serving as an adequate injury is a decision that has since been vacated.

Accordingly, Plaintiffs have failed to illustrate that the MTA legitimately conflicts with or violates the ADA.

      ii.  <u>The MTA is not Field Preempted by State Law</u>

On the field preemption argument, again Plaintiffs state the correct standard, but fail to

8

recognize that this case fails to satisfy that standard. That is, while field preemption can apply to local laws regulating the same subject matter where "a declaration of state policy evinces the intent of the Legislature to preempt local laws on the same subject matter… ," *Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead,* 91 A.D.3d 126, 135 (2d Dep't 2011), here, there is no longer any state policy on mask wearing. As Plaintiff's acknowledge, N.Y. Penal Law 240.35(4) has been repealed, so there is no longer a state law that speaks to mask wearing. To claim that the state has somehow maintained authority over mask wearing under this statute is not supported by the master statute itself, which is directed at the topic of loitering N.Y. Penal Law § 240.35. As for Plaintiff's citation to contemporaneous statements by Assemblyman Dan Quart that the repeal was made to stop the spread of COVID and ensure that people feel safe wearing masks, those May 2020 statements, made at the height of COVID, and before a vaccine had been developed have no relevance to the realities of 2024.

In short, there is no state law currently governing mask-wearing or preserving that topic to the state's purview, so Plaintiffs cannot claim that the MTA would "inhibit the operation of the State's general law." *Chwick v. Mulvey*, 81 A.D.3d 161, 169 (2d Dep't 2010).

### B. Plaintiffs Have Failed to Establish the Element of Irreparable Harm

Plaintiffs correctly acknowledge that the showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *People of New York ex rel. Spitzer v. Cty of Delaware*, 82 F. Supp. 2d 12, 16 (N.D.N.Y. 2000). Yet here, as discussed at length above, Plaintiffs have failed to identify any such harm "that is not remote or speculative but actual and imminent. . . ." *Galusha v. New York State Dep't of Envtl. Conservation*, 27 F. Supp. 2d 117, 122 (N.D.N.Y. 1998).

In an attempt to identify a qualifying harm, Plaintiffs refer to the choice they are "forced"

into, which, as discussed above, is not a legitimate "either/or" choice, as Plaintiffs still have the option of continuing to wear masks in public pursuant to the health and safety carve-out in the MTA. Again, Plaintiffs' references to being accosted by police are speculative fears unsupported by any factual occurrence. Plaintiffs' references to potential harassment by other citizens has no bearing on this litigation, where those citizens are not alleged to be employees of NASSAU or otherwise related to Defendants. Plaintiff's references to the potential dangers of airborne disease are negated by the continued availability of masks pursuant to the statutory carve-out for masks worn for the reasons of health and safety.

While Plaintiff includes a lengthy discussion of perceived harassment at the Legislative Hearing on August 5, 2024, the events of a heated political debate, which necessarily took place prior to the statute being enacted, are obviously irrelevant to the effect of the statute itself, which was not enacted until over a week after this hearing.

### C. The Balance of Hardships Weighs in the County's Favor

Plaintiffs correctly acknowledge that a court determining a motion for preliminary injunction "Must balance the competing claims of injury and must consider the effect on each party of the granting of withholding of the requested relief." *Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.,* 103 F. Supp. 3d 244, 262 (N.D.N.Y 2015). Here, that balance clearly weighs in NASSAU's favor.

Preliminarily, the MTA is entitled to an "exceedingly strong presumption of constitutionality." *Verizon NY, Inc. v Vil. of Westhampton Beach*, 2014 US Dist LEXIS 84479, at *88 (EDNY June 16, 2014, No. CV 11-252 (AKT)), quoting *Lighthouse Shores, Inc. v Islip*, 41 NY2d 7 (1976). Given that presumption of constitutionality, a plaintiff seeking to invalidate a legislative act must demonstrate unconstitutionality beyond a reasonable doubt and "only as a

last resort should courts strike down legislation on the ground of unconstitutionality." *Lighthouse Shores, Inc.*, 41 NY2d at 11.  Under the circumstances of this case, and in light of the specific exception for health and safety of the mask wearer, the Defendants submit that Plaintiff's will not be able to satisfy the high burden.

As reviewed at length above, Plaintiffs have suffered no injury at the hands of the MTA and any claims of potential future injury are purely speculative. On the other hand, if the injunction were to be granted, NASSAU will find itself prevented from enforcing a law that finally passed after strenuous debate, and, as Plaintiffs' own brief recognizes, was intended to combat harassing, menacing, or criminal behavior.  *See* Miscellaneous Laws of Nassau County, Title 91. Plaintiffs attempt to disingenuously undermine the County's intent by arguing that masked "protestors" and "agitators" are not actually causing any crime and that there is no evidence of any protests resulting in violence ignores the fact that the MTA is *not* directed at protests or protestors.  Indeed the statute does not make a single mention of protestors, and is directed instead at individuals using a mask as part of an act intended to "intimidate, threaten, abuse, or harass any other person." *Id.*

In comparing the speculative and illusory "injuries" that Plaintiffs have dreamt up, with the very real consequence of preventing a municipality of implementing a crime prevention measure, the balance of hardships clearly weigh in the County's favor.

### D.  Enforcing the MTA is in the Public Interest

It follows from the previous section that the public interest would be disserved by issuing the preliminary injunction sought by Plaintiffs. *eBay Inc. v Mercexchange LLC,* 547 U.S. 388, 391 (2006). After all, the "'legitimate and compelling state interest'" in protecting the community from crime cannot be doubted." *Schall v. Martin*, 467 U.S. 253, 264 (1984) (quoting

11

*De Veau v. Braisted*, 363 U.S. 144, 155 (1960). The Supreme Court of the United States has repeatedly held that crime prevention is "a weighty social objective." *Brown v. Texas*, 443 U.S. 47, 52 (1979).

Plaintiffs champion the public interest in mask-wearing as a health and safety measure, failing to recognize that both interests can coexist if the preliminary injunction request is denied, given the MTA's explicit carve-out for masks worn for reasons of health and safety. Indeed, Plaintiff's attempts to set these two interests at odds with one another is an artificial and unnecessary conflict that NASSAU's legislature already accounted for and rendered moot with the language of the statute. In short, the interests in both crime prevention and public health can be served if the MTA is left undisturbed, while granting the injunction requested herein would sacrifice the crime prevention interest served by the MTA as an unnecessary gesture to Plaintiffs, who are already free to wear masks for health reasons under the MTA.

### IV.  CONCLUSION

Based on the showing set forth above, Defendants respectfully request that the Court deny Plaintiff's motion in its entirety and dismiss Plaintiff's Complaint in its entirety.

<div style="text-align:right">

Respectfully submitted,
THOMAS A. ADAMS
Nassau County Attorney
*Attorney for the County of Nassau*

/s/ *Brian P. McLaughlin*
By: **BRIAN P. MCLAUGHLIN, ESQ**.
Deputy County Attorney
1 West Street
Mineola, NY 11501.

</div>

TO:   Jessica Richwalder, Esq.
      Christina Asbee, Esq,
      William Tronsor, Esq.
      DISABILITY RIGHTS NEW YORK

12

*Attorneys for Plaintiff(s)*
279 Troy Road, Suite 9
PMB 236
Rensselaer, NY 12144

13