```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
G.B. and S.S.
                                    Plaintiffs,        **MEMORANDUM & ORDER**
                                                       24-CV-5884 (JMA) (SIL)

                  -against-                                    **FILED
                                                                CLERK**

NASSAU COUNTY and NASSAU COUNTY                       **3:35 pm, Sep 25, 2024**
EXECUTIVE BRUCE BLAKEMAN** *in his official*
*capacity*                                            **U.S. DISTRICT COURT
                                    Defendants.       EASTERN DISTRICT OF NEW YORK
                                                      LONG ISLAND OFFICE**
------------------------------------------------------------------------X
```

**AZRACK, United States District Judge:**

Plaintiffs brought this pre-enforcement facial challenge to the Mask Transparency Act ("MTA") recently codified at Title 90 of the Miscellaneous Laws of Nassau County, New York, which makes it a misdemeanor to wear a face mask under certain circumstances. (See generally Compl., ECF No. 1.) Plaintiffs also filed a motion for a temporary restraining order and preliminary injunction against Defendants Nassau County and its County Executive, Bruce Blakeman, to prevent enforcement of the MTA. (Mot. TRO Prelim. Inj., ECF No. 3.) For the following reasons, this case is DISMISSED without prejudice for lack of subject matter jurisdiction and Plaintiffs' preliminary injunction motion is accordingly DENIED AS MOOT.

## I.    BACKGROUND

**A.    Facts**

The facts set forth herein are undisputed.

### 1.    The Public Hearing for and Passage of the MTA

On August 5, 2024, the Nassau County Legislature held a session allowing for public comments on the bill that would become the MTA. (Tronsor Aff., ECF No. 3-3 ¶ 1; see Richwalder

Aff. Ex. C, ECF No. 3-3 (providing the full transcript for the legislative session).[1]) Current and former public officials spoke about the bill. (Tronsor Aff., ECF No. 3-3 ¶¶ 16-21.) Members of the public in favor of the bill heckled people who were against it. (See id. ¶¶ 21-30, 40.) An opponent of the bill was arrested for refusing to leave the podium after his three-minute comment period expired. (See id. ¶¶ 45-47; see also id. ¶¶ 33, 36 (reporting that MTA proponents were afforded more time to comment, including one proponent who was allowed four-and-a-half minutes).) The Nassau County Legislature ultimately adopted the MTA. (Id. ¶¶ 48-49.)

### 2. The MTA's Language

The MTA states as follows:

> No person or persons[,] while wearing any mask or facial covering whereby the face or voice is disguised <u>with the intent to conceal the identity of the wearer</u>, [may] enter, or appear upon or within any sidewalk, walkway, alley, street, road, highway or other public right-of-way or public property or private property without the consent of the owner or tenant.

Misc. Laws of Nassau Cnty. tit. 90 § 3(a) (emphasis added).[2] It also provides that "[a] law enforcement officer may require a person or persons to remove the mask during traffic stops or when the officer has reasonable suspicion of criminal activity and/or intention to partake in criminal activity." Id.

The MTA's text limits its application. The statute says that it "<u>shall not apply to facial coverings worn to protect the health or safety of the wearer</u>, for religious or cultural purposes, or for the peaceful celebration of a holiday or similar religious or cultural event for which the wearing

---

[1] The 594-page filing at ECF No. 3-3 contains the affirmation of attorney Jessica Richwalder with its four exhibits, the affidavit of attorney William Tronsor, the affidavit of S.S., and the affidavit of G.B. For ease of reference, the Court's citations to that filing identify and use pinpoint citations for the relevant document.

[2] The MTA's full text is also set forth in the Complaint's Exhibit A at ECF No. 1-4.

2

of masks or facial coverings are customarily worn." Id. (emphasis added).  The MTA further states

that it applies "only" if the person wearing the mask or facial covering:

1. remains or congregates in a public place with other persons so masked or disguised, or knowingly permits or aids persons so masked or disguised to congregate in a public place; or

2. acts with the intent, by force or threat of force, to injure, intimidate, or interfere with any person because of the person's exercise of any right secured by federal, state, or local law or to intimidate such person or any other person or any class of persons from exercising any right secured by federal, state, or local law; or

3. acts with the intent to intimidate, threaten, abuse, or harass any other person; or

4. is engaged in conduct that could reasonably lead to the institution of a civil or criminal proceeding against her or him, with the intent of avoiding identification in such a proceeding.

Id. § 3(b).  A person who violates the MTA commits a misdemeanor punishable by a fine of no more than $1,000.00 and/or imprisonment of no more than one year.  Id. § 4.

### 3. Plaintiffs and their Relevant Circumstances

Plaintiffs have been Nassau County, New York residents for over twenty years.[3] (S.S. Aff., ECF No. 3-3 ¶ 2; G.B. Aff., ECF No. 3-3 ¶ 2.)  They both have disabilities.  S.S. has common variable immunodeficiency, kidney disease, respiratory impairments, and post-viral syndrome. (S.S. Aff., ECF No. 3-3 ¶¶ 4, 8; see also id. ¶¶ 5-6 (further describing S.S.'s medical conditions).) G.B. has cerebral palsy, asthma, and uses a wheelchair for mobility.  (G.B. Aff., ECF No. 3-3 ¶¶ 4-5.)  Plaintiffs' disabilities increase their risk of serious side effects and death from airborne illnesses.  (See S.S. Aff., ECF No. 3-3 ¶¶ 8-12; G.B. Aff., ECF No. 3-3 ¶¶ 6-9.)  "Since the COVID-19 pandemic," Plaintiffs have worn masks when they leave their homes "to protect [themselves] from illness."  (S.S. Aff., ECF No. 3-3 ¶ 14; G.B. Aff., ECF No. 3-3 ¶ 10.)  Plaintiffs regularly left

---

[3] As noted below, the Court granted Plaintiffs permission to proceed in this case under their initials.

their homes while masked before enactment of the MTA. (See S.S. Aff., ECF No. 3-3 ¶¶ 17-20; G.B. Aff., ECF No. 3-3 ¶¶ 13-18.) After enactment of the MTA, G.B. continues to regularly leave home, (G.B. Aff., ECF No. 3-3 ¶¶ 17, 21), but S.S. will only leave home "when necessary to avoid likely harm and threat to my life." (S.S. Aff., ECF No. 3-3 ¶ 35.) Plaintiffs will not remove their masks if ordered to do so by law enforcement. (See S.S. Aff., ECF No. 3-3 ¶ 25; G.B. Aff., ECF No. 3-3 ¶ 24.) Plaintiffs fear being harassed, arrested, and prosecuted for violating the MTA. (See S.S. Aff., ECF No. 3-3 ¶¶ 22-24, 32-34; G.B. Aff., ECF No. 3-3 ¶¶ 19-26.)

**B.      Procedural History**

Plaintiffs commenced this action seeking declaratory and injunctive relief on the basis that the MTA violates the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., the Rehabilitation Act of 1973, 29 U.S.C. §794(a), and the New York State Constitution. (Compl., ECF No. 1.) Plaintiffs also filed motions to proceed under their initials, obtain an ex parte temporary restraining order against enforcement of the MTA, and obtain a preliminary injunction for the same relief. (Mot. Proc. Anonym. ECF No. 2; Mot. TRO Prelim. Inj., ECF No. 3.)

The Court granted Plaintiffs leave to proceed under their initials, declined to grant Plaintiffs' request for an ex parte temporary restraining order, and set a briefing schedule for Plaintiffs' preliminary injunction motion. (See Orders dated Aug. 23, 2024, Aug. 26, 2024, Sept. 4, 2024.) The parties accordingly briefed the instant motion. (See Mem. Supp. Pls.' Mot. TRO Prelim. Inj. ("Pls. Mem"), ECF No. 3-1; Defs.' Mem. Opp. Pls.' Mot. TRO Prelim. Inj. ("Opp."), ECF No. 19; Reply Supp. Pls.' Mot. TRO Prelim. Inj. ("Reply"), ECF No. 20.) The Court also granted Plaintiffs' subsequent motion for leave to submit two additional exhibits in support of their preliminary injunction motion. (See Sept. 24, 2024, Order.)

4

## II.     LEGAL STANDARD

"Article III of the Constitution grants the federal courts the power to decide legal questions only in the presence of an actual 'Case' or 'Controversy.'" Wittman v. Personhuballah, 578 U.S. 539, 543 (2016) (quoting U.S. Const. art. III, § 2, cl. 1) (brackets omitted). "This restriction requires a party invoking a federal court's jurisdiction to demonstrate standing." Id. (citing Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997)); see Va. House of Delegates v. Bethune-Hill, 587 U.S. 658, 662-63 (2019). That is, "[f]or a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." FDA v. All. for Hippocratic Med., 602 U.S. 367, 368 (2024) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)). This "ensure[s] that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" Id. (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 487 (1982)). "Standing doctrine helps safeguard the Judiciary's proper—and properly limited—role in our constitutional system. By ensuring that a plaintiff has standing to sue, federal courts prevent the judicial process from being used to usurp the powers of the political branches." United States v. Texas, 599 U.S. 670, 675-76 (2023) (internal quotation marks omitted); see Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408-09 (2013) ("Relaxation of standing requirements is directly related to the expansion of judicial power . . . ." (quoting United States v. Richardson, 418 U.S. 166, 188 (1974) (Powell, J., concurring))). "Article III standing is a 'bedrock constitutional requirement that [the Supreme] Court has applied to all manner of important disputes.'" FDA, 602 U.S. at 378 (quoting United States, 599 U.S. at 675).

### III.  DISCUSSION

"This case begins and ends with standing" under Article III of the Constitution. Carney v. Adams, 592 U.S. 53, 58 (2020). Plaintiffs "bear[] the burden of establishing standing as of the time [t]he[y] brought this lawsuit and maintaining it thereafter." Id. at 59 (citations omitted). In other words, each Plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" Murthy v. Missouri, 144 S. Ct. 1972, 1986 (2024) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Those elements are "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." FDA, 602 U.S. at 380 (first citing Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009); and then citing Lujan, 504 U.S. at 560-561).

At this preliminary injunction stage, each Plaintiff "must make a 'clear showing' that she is 'likely' to establish each element of standing." Id. (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U. S. 7, 22 (2008)). Put differently, "when a preliminary injunction is sought, a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." Do No Harm v. Pfizer Inc., 96 F.4th 106, 114 (2d Cir. 2024) (quoting Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011)). Thus, a plaintiff seeking to show standing on a motion for a preliminary injunction must support the relevant facts "by affidavit or other evidence[,] which . . . will be taken to be true." Id. at 114-15 (quoting Cacchillo, 638 F.3d at 404).

As explained below, Plaintiffs fail to meet their burden to establish standing.[4]

A.      **Plaintiffs Fail to Show an Injury in Fact Under the Governing Standard**

Defendants assert that Plaintiffs have not sufficiently demonstrated that they suffered or will suffer an injury in fact caused by Defendants, particularly because the MTA makes "explicit exemption for persons, such as Plaintiffs, who wear masks for reasons of health and safety." (Opp., ECF No. 19 at 5.) The Court agrees.

An injury in fact must be "concrete, particularized, and actual or imminent." Clapper, 568 U.S. at 409 (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)). An injury is concrete when it is "real and not abstract." FDA, 602 U.S. at 381 (citing TransUnion, 594 U.S. at 424). An injury is particularized when it "affect[s] 'the plaintiff in a personal and individual way'" and is "not a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). An injury is actual or imminent, rather than speculative, when it "ha[s] already occurred or [is] likely to occur soon." Id. (citing Clapper, 568 U.S. at 409). On that last point, "'threatened injury must be *certainly impending* to constitute injury in fact' . . . and . . . 'allegations of *possible* future injury' are not sufficient." Clapper, 568 U.S. at 409 (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)) (brackets omitted).

---

[4]     For three reasons, there is no need for a preliminary injunction hearing. First, the facts are undisputed. See Demirayak v. City of N.Y., 746 F. App'x 49, 52 (2d Cir. 2018) (citing In re Rationis Enters., Inc. of Panama, 261 F.3d 264, 269 (2d Cir. 2001)); Md. Cas. Co. v. Realty Advisory Bd. on Labor Rels., 107 F.3d 979, 984 (2d Cir. 1997). Second, as explained below, Plaintiffs failed to establish subject matter jurisdiction. See Do No Harm v. Pfizer Inc., 646 F. Supp. 3d 490, 517-18 (S.D.N.Y. 2022) (citing Pietsch v. Bush, 755 F. Supp. 62, 68 (E.D.N.Y. 1991)), aff'd, 96 F.4th 106 (2d Cir. 2024). Third, the parties did not request a preliminary injunction hearing, and oral argument would not assist the Court. See, e.g., AD/SAT v. AP, 181 F.3d 216, 226 (2d Cir. 1999). Plaintiffs did not seek jurisdictional discovery and did not request an evidentiary hearing or other opportunity to present evidence regarding jurisdiction. See Do No Harm, 96 F.4th at 121.

Applying these principles, "the Supreme Court has made clear" that a plaintiff who has not endured enforcement of the statute he challenges must show that "he is facing the 'threatened enforcement of [the given] law' that is 'sufficiently imminent.'" Picard v. Magliano, 42 F.4th 89, 97 (2d Cir. 2022) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158-59 (2014)); see Steffel v. Thompson, 415 U.S. 452, 459 (1974) (holding that a plaintiff threatened with prosecution for violating a law had standing to challenge it). Specifically, to satisfy the injury-in-fact requirement before a statute is enforced against him, a plaintiff must show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Susan B. Anthony List, 573 U.S. at 159 (quoting Babbitt v. Farm Workers, 442 U. S. 289, 298 (1979)); see Picard, 42 F.4th at 97.

Plaintiffs fail to sufficiently demonstrate that their "intended future conduct is 'arguably proscribed by the statute' they wish to challenge." Susan B. Anthony List, 573 U.S. at 162 (quoting Babbitt, 442 U.S. at 298) (brackets and ellipsis omitted). Plaintiffs repeatedly contend that they have standing because, as they see it, the MTA "criminalized wearing a face mask." (Reply, ECF No. 20 at 2, 3; see id. at 4-5 (asserting the MTA "prevents Plaintiffs from going into public wearing face masks without fear of prosecution").) But Plaintiffs wear masks to protect themselves from illness. (S.S. Aff., ECF No. 3-3 ¶ 14; G.B. Aff., ECF No. 3-3 ¶ 10.) That is expressly excluded from the MTA's reach by its health and safety exception. See Misc. Laws of Nassau Cnty. tit. 90 § 3(a). Plaintiffs also do not wear masks in the manner proscribed by the MTA, namely, "with the intent to conceal the identity of the wearer." Id. Plaintiffs "lack standing to challenge the [MTA] because, simply put, it does not apply to them." Gazzola v. Hochul, 88 F.4th 186, 203 (2d Cir. 2023) (addressing a pre-enforcement challenge to a criminal law imposing requirements for carrying concealed firearms), cert. denied, 144 S. Ct. 2659 (2024); accord Friends of George's,

8

Inc. v. Mulroy, 108 F.4th 431, 436-38 (6th Cir. 2024) (holding plaintiffs lacked pre-enforcement standing because they "failed to show any intention to even arguably violate" the given law); L.H. v. Indep. Sch. Dist., 111 F.4th 886, 894 (8th Cir. 2024) (similar); see also MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy, 861 F.3d 40, 45-46 (2d Cir. 2017) (rejecting plaintiff's argument that it was harmed by and therefore had standing to challenge a statute because the alleged harm was "unsupported by the text of the Act").

Plaintiffs' effort to counter that conclusion falls short. Plaintiffs insist that they face prosecution for violating the MTA because its inapplicability to persons wearing masks to protect their health will be "misapplied or ignored by law enforcement." (Reply, ECF No. 20 at 8.) To that end, Plaintiffs contend the health and safety exclusion under the MTA is "too vague" and suffers from a lack of guidance on how it "should be applied." (Id. at 5, 8 (emphasis removed).) Plaintiffs' contentions fail on the facts and law. Factually, they ignore that law enforcement guidance (1) emphasizes the MTA does "**not apply to facial coverings worn to protect the health or safety of the wearer**," (2) instructs that "State and Federal case law with regard to standards of proof and the [Fourth A]mendment should be observed," and (3) requires that "[t]he totality of circumstances and [required] elements of suspicion should ALWAYS be articulated" before even stopping an individual or directing them to remove a mask. (Richwalder Aff. Ex. B, ECF No. 20-1 at 12-13.) In any event, legally, "a party alleging that its conduct could be proscribed by the challenged statute cannot rely on an argument that the statute might be misconstrued by law enforcement." Friends of George's, Inc., 108 F.4th at 437. That is, asserting law enforcement will misapply a law to a given plaintiff "proves too remote or attenuated" to confer standing. Bell v. Keating, 697 F.3d 445, 451 (7th Cir. 2012) (citing Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983)); see Ass'n of Am. Physicians & Surgs v. United States FDA, 13 F.4th 531, 544 (6th Cir.

9

2021); PeTA v. Rasmussen, 298 F.3d 1198, 1203 (10th Cir. 2002).[5] In this case, "Plaintiffs' subjective intent is the whole ball of wax"; their insistence that they will wear masks to protect themselves "prevents them from falling within the ambit of" the MTA. Legacy Ent. & Arts Found., Inc. v. Mina, No. 21-CV-698, 2021 WL 4444688, at *5 & n.7 (M.D. Fla. Aug. 20, 2021); see Plunderbund Media L.L.C. v. Dewine, 312 F. Supp. 3d 654, 661 (N.D. Ohio 2018) (concluding plaintiffs failed to show their intended speech was arguably proscribed by the subject statute because they did not report an intent to act with the mens rea to abuse, harass, or threaten others), aff'd, 753 F. App'x 362, 370 (6th Cir. 2018) ("Ohio's cyber-harassment law requires a specific mental state, and it is not 'inevitable' that Plaintiffs will post articles or comments that appear to be made with the specific intent to abuse or harass another person.").

B. **Plaintiffs' Alternative Standing Arguments are Deficient**

Plaintiffs appear to also advance other alternative standing arguments. For the additional reasons set forth below, none are persuasive.

Plaintiffs contend that the MTA's supposed violation of the ADA confers standing. (See Reply, ECF No. 20 at 3.) But "Article III standing requires a concrete injury even in the context of a statutory violation." TransUnion LLC, 594 U.S. at 426 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 331 (2016)); see Thole v. U.S. Bank N.A., 590 U.S. 538, 544 (2020); Harty v. W. Point Realty, Inc., 28 F.4th 435, 443-44 (2d Cir. 2022).

---

[5] Plaintiffs rely on National Organization for Marriage, Inc. v. Walsh, 714 F.3d 682, 689-90 (2d Cir. 2013) for the proposition that Plaintiffs "face a 'credible threat' that the MTA will enforced against them . . . [and] the resulting changes to their actions, amounting to self-censorship to avoid enforcement against them, are sufficient to confer standing." (Reply, ECF No. 20 at 4 & n.2.) Walsh, however, bolsters the Court's analysis insofar as it invoked the standard applied above. See 714 F.3d at 689 (holding that standing for a pre-enforcement challenge requires intent to undertake "conduct arguably . . . proscribed by [the given] statute" (internal quotation marks omitted)). Walsh is otherwise inapposite because the plaintiff there, unlike here, established that its intended conduct was "arguably . . . proscribed" by the challenged statute and thus could have subjected it to enforcement consequences. See id. at 690 (explaining that broadcasting the intended messages without registering as a political committee could expose plaintiff to civil and criminal penalties).

Plaintiffs also assert that the MTA's existence "excludes them from equal access to public life in Nassau County." (Reply, ECF No. 20 at 1.) Plaintiffs report that this alleged deprivation is occurring because the MTA "deters" Plaintiffs from "engaging in all aspects of public and private life outside of their home" due to their fear of how "police and members of the public will react to [Plaintiffs] masking in public." (Id. at 4.) Even when plaintiffs rely on such alleged deterrence and chilling in a pre-enforcement challenge to establish an injury, they "must" meet the standard set out in Susan B. Anthony List. Nastri v. Dykes, No. 23-1023, 2024 WL 1338778, at *1 (2d Cir. Mar. 29, 2024) (explaining that a plaintiff "must" satisfy that "distinctive rule" to show standing to challenge "a law before it has been enforced against him"). For the reasons stated above, Plaintiffs fail to meet that standard. To the extent Plaintiffs assert that their claims should be analyzed under a different framework, the Court disagrees.

Relatedly, Plaintiffs insist that Nassau County has already enforced the MTA in a manner that "exclude[es] Plaintiffs from the public sphere." (Pl's. Mot. Submit Suppl. Evid., ECF No. 21.) In support of that argument, Plaintiffs rely on Nassau County Legislator Carrié Solages's recent social media posts that (1) "asked respectfully" that each attendee at his September 18, 2024, political rally comply with the MTA by "not wear[ing] a mask to conceal your face" and (2) included a flyer for the rally that said in the bottom right corner "No Facemask." (Id. (quoting Pl's. Suppl. Evid., ECF No. 21-1 at 2, 4) (emphasis added).) But these posts do not amount to actual or threatened enforcement against Plaintiffs (or even against any other citizens). Plaintiffs offer no evidence that Legislator Solages is part of the executive branch of Nassau County or that he otherwise plays a role in enforcing the MTA. And, even assuming arguendo that social media posts from a single Legislator could somehow have potential relevance to Nassau County's enforcement of the MTA, Legislator Solages's posts contain a "respectful[]" "ask[]"—not a

11

demand—for compliance with the MTA. (Pl's. Suppl. Evid., ECF No. 21-1 at 4 (requesting compliance with the "MASK law" and that attendees not wear masks "to conceal your face[s]")); accord Misc. Laws of Nassau Cnty. tit. 90 § 3(a). Similarly, the "No Facemask" statement on the flyer also does not remedy Plaintiffs' failure to satisfy the controlling Susan B. Anthony List standard. The MTA criminalizes masks that are worn only "with the intent to conceal the identity of the wearer" and explicitly excludes masks "worn to protect the health or safety of the wearer." Misc. Laws of Nassau Cnty. tit. 90 § 3(a). The "No Facemask" statement on a political flyer from a single Legislator does not alter the clear language of the MTA. The MTA does not "arguably proscribe" all facemasks. Even with Plaintiffs' new evidence, they are still unable to satisfy the governing Susan B. Anthony List standard.

Additionally, Plaintiffs quote Kreisler v. Second Avenue Diner Corporation, 731 F.3d 184, 188 (2d Cir. 2013) to argue that "[d]eterrence constitutes an injury under the ADA." (Reply, ECF No. 20 at 4.) In Kreisler, the wheelchair-bound plaintiff suffered an injury in fact because he was deterred from entering a building upon seeing its lack of a wheel-chair accessible entrance. 731 F.3d at 188. Kreisler, however, was not a pre-enforcement case. In Kreisler, the defendant's alleged conduct—maintenance of an unlawful physical barrier—was complete; it was unnecessary to speculate what the defendant was likely to do in the future. Kreisler simply does not apply here. Rather, Plaintiffs' claims are more properly analyzed under the well-established framework that applies to pre-enforcement challenges.[6]

---

[6] The other cases Plaintiffs cite are similarly distinguishable. For example, in Hassan v. City of New York, the defendant allegedly undertook surveillance activity against the plaintiffs pursuant to a discriminatory policy that targeted Muslims. See 804 F.3d 277, 291 (3d Cir. 2015), as amended (Feb. 2, 2016). In ACLU v. Clapper, the government allegedly seized plaintiffs' telephone metadata under an unlawful collection program. See 785 F.3d 787, 801-03 (2d Cir. 2015). Here, however, Defendants have not enforced the MTA against Plaintiffs in any fashion.

Finally, Plaintiffs contend that they have standing due to anticipated harassment from non-party civilian citizens who are hostile toward mask wearing. (See Reply, ECF No. 20 at 2-4, 8-9.) The argument fails for each standing element even when independently assessed outside the governing Susan B. Anthony List framework. First, Plaintiffs do not sufficiently demonstrate that they will imminently suffer this hypothetical harassment, which precludes it from being a cognizable injury in fact. See Clapper, 568 U.S. at 409 (explaining that future injury "must be *certainly impending*" to be imminent and "allegations of *possible* future injury are not sufficient." (internal quotations and brackets omitted)). Second, the harassment would not be "fairly traceable" to Nassau County enacting the MTA; instead, it would be "the result of the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)) (internal alterations omitted); see Max v. Kaplan, No. 23-201-CV, 2024 WL 276717, at *2 (2d Cir. Jan. 25, 2024); Gazzola, 88 F.4th at 202-03; Roberts v. Bassett, No. 22-622-CV, 2022 WL 16936210, at *3 (2d Cir. Nov. 15, 2022), cert. denied sub nom. Roberts v. McDonald, 143 S. Ct. 2425, 216 L. Ed. 2d 1275 (2023). That Plaintiffs acknowledge anti-mask hostilities took place before the MTA was adopted confirms that conclusion. (See Reply, ECF No. 20 at 8-9 (discussing "[t]he harassing behaviors during the Legislative Hearing on August 5, 2024"); see also S.S. Aff., ECF No. 3-3 ¶ 21 (reporting "sneering looks" S.S. endured while masked prior to and irrespective of the MTA).) Third, and relatedly, it is thus unclear how the relief Plaintiffs seek, declaring the MTA void and enjoining Defendants' enforcement of it, is "likely" to "redress[]" the civilian anti-mask harassment that Plaintiffs acknowledge predated the MTA. FDA, 602 U.S. at 380; see id. (explaining that the standing elements of causation and redressability are usually "flip sides of the same coin" (internal

quotation marks omitted)); Gazzola, 88 F.4th at 203 ("No court may enjoin the world at large, or purport to enjoin challenged laws themselves." (internal quotation marks and brackets omitted)).

C. **Plaintiffs' Lack of Standing Requires Dismissing this Case and Denying as Moot the Preliminary Injunction Motion**

As explained above, the Court lacks subject matter jurisdiction because Plaintiffs have not demonstrated Article III standing to bring their claims. Where, as here, "a court determines it lacks subject matter jurisdiction, it cannot consider the merits of the preliminary injunction motion and should dismiss the action in its entirety." Do No Harm, 96 F.4th at 120. Accordingly, the Court dismisses this case without prejudice and denies Plaintiffs' preliminary injunction motion as moot. See id. at 121 (affirming this approach); Rojas v. Cigna Health & Life Ins. Co., 793 F.3d 253, 259 (2d Cir. 2015) (same); Roberts, 2022 WL 16936210, at *3 (same); see also Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1074 (2d Cir. 2021) (explaining that dismissal for lack of subject matter jurisdiction must be done without prejudice).

The Court does not grant leave to amend. See Harty v. W. Point Realty, Inc., 28 F.4th 435, 445 (2d Cir. 2022) (affirming such a dismissal for lack of jurisdiction and explaining how that result differs from a dismissal with prejudice). Permitting amendment would be improper because Plaintiffs failed to meet the applicable summary judgment standard, which requires evidence instead of allegations. See Do No Harm, 96 F.4th at 114-15, 121. "Once the court conclude[s] that [Plaintiffs] lacked standing, dismissal, not further proceedings, [is] the logical next step." Id. at 121. To nonetheless permit amendment "would amount to *reversing* the case to a *prior* stage." Id.; see Nat'l Prod. Ass'n v. James, No. 23-CV-08912, 2024 WL 2977683, at *9 n.9 (E.D.N.Y. June 13, 2024); Blakeman v. James, No. 2:24-CV-1655, 2024 WL 1604231, at *2 (E.D.N.Y. Apr. 12, 2024). Moreover, dismissal without leave to amend is particularly appropriate here because

14

Plaintiffs are counseled and did not seek leave to amend. See Felder v. United States Tennis Ass'n, 27 F.4th 834, 848 (2d Cir. 2022); Hu v. City of New York, 927 F.3d 81, 107 (2d Cir. 2019).

## IV. CONCLUSION

Given Plaintiffs' lack of standing for the reasons stated above, the Complaint is DISMISSED without prejudice and without leave to amend, and Plaintiffs' injunction motion is accordingly DENIED AS MOOT. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: September 25, 2024
       Central Islip, New York

                                            /s/ JMA
                                         JOAN M. AZRACK
                                       UNITED STATES DISTRICT JUDGE